UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW HOPKINS, | ) |
|               Plaintiff, | ) |
| v. | ) Case No. _____ |
| | ) JURY TRIAL DEMANDED |
| NEOGEN CORP., JAMES C. BOREL, WILLIAM T. BOEHM, RONALD D. GREEN, RALPH A. RODRIGUEZ, JAMES P. TOBIN, DARCI L. VETTER, and CATHERINE E. WOTEKI, | ) |
|               Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on December 14, 2021 (the "Proposed Transaction"), pursuant to which Neogen Corp. ("Neogen" or the "Company") will acquire 3M Company ("3M"), Garden SpinCo Corporation ("SpinCo"), and Nova RMT Sub, Inc. ("Merger Sub").

2. On December 13, 2021, Neogen's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") with 3M, SpinCo, and Merger Sub. Pursuant to the terms of the Merger Agreement, 3M's stockholders will receive shares of Neogen for each share of 3M common stock they own.

3. On March 18, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Neogen common stock.

9. Defendant Neogen is a Michigan corporation and a party to the Merger Agreement. Neogen's common stock is traded on the NASDAQ under the ticker symbol "NEOG."

10. Defendant James C. Borel is Chairman of the Board of the Company.

11. Defendant William T. Boehm is a director of the Company.

12. Defendant Ronald D. Green is a director of the Company.

13. Defendant Ralph A. Rodriguez is a director of the Company.

14. Defendant James P. Tobin is a director of the Company.

15. Defendant Darci L. Vetter is a director of the Company.

16. Defendant Catherine E. Woteki is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

18. Neogen develops and markets comprehensive solutions dedicated to food and animal safety.

19. On December 13, 2021, Neogen's Board caused the Company to enter into the Merger Agreement.

20. Pursuant to the terms of the Merger Agreement, 3M's stockholders will receive Neogen common stock per share.

21. According to the press release announcing the Proposed Transaction:

NEOGEN Corporation (NASDAQ: NEOG) and 3M (NYSE: MMM) announced today that they have entered into a definitive agreement pursuant to which 3M will separate its Food Safety business and simultaneously combine it with NEOGEN in a transaction that is intended to be tax-efficient to 3M and its shareholders for U.S. federal income tax purposes. The combination will create an innovative leader in the food safety sector with a comprehensive product range and a strategic focus on the category's long-term growth opportunities.

The transaction implies an enterprise value for 3M's Food Safety business of approximately $5.3 billion, including $1 billion in new debt to be incurred by 3M's Food Safety business. This represents an implied multiple of approximately 32x and 27x CY 2022E Adjusted EBITDA pre and post run-rate synergies respectively, based on NEOGEN's closing price as of December 13, 2021. 3M's Food Safety

3

business will fund to 3M consideration valued at approximately $1 billion, subject to closing and other adjustments. The combined company is expected to have an enterprise value of approximately $9.3 billion, based on NEOGEN's closing share price as of December 13, 2021. Under the terms of the definitive agreements, which involve a tax-free "Reverse Morris Trust" structure, existing NEOGEN shareholders will continue to own approximately 49.9% of the combined company, and 3M shareholders will receive approximately 50.1% of the combined company. The Boards of Directors of both NEOGEN and 3M have unanimously approved the transaction. . . .

Transaction Details

The transaction involves a tax-free "Reverse Morris Trust" transaction structure, where 3M's Food Safety business will be spun-off or split-off to 3M shareholders and simultaneously merged with a wholly owned subsidiary of NEOGEN. The transaction is intended to be tax-efficient to 3M and 3M's shareholders for U.S. federal income tax purposes. At the completion of the transaction, NEOGEN will issue a number of shares to 3M shareholders such that 3M shareholders will receive approximately 50.1% of the combined company and existing NEOGEN shareholders will continue to own approximately 49.9% of the combined company. In connection with the transaction, 3M will also receive consideration valued at approximately $1 billion, subject to closing and other adjustments.

NEOGEN's expected pro forma net leverage ratio at close is expected to be less than 2.5x, inclusive of the $1 billion of new debt. Strong expected free cash flow generation and EBITDA growth of the combined business enables rapid deleveraging post-closing.

The transaction is expected to close by the end of Q3 2022, subject to approval by NEOGEN shareholders, receipt of required regulatory approvals and the satisfaction of other customary closing conditions.

Leadership and Governance

NEOGEN's President and Chief Executive Officer, John Adent, and NEOGEN's existing management team will continue to lead the combined company.

The size of the NEOGEN board will be increased and two new independent board members, to be designated by 3M, will be appointed at closing. . . .

Advisors

Centerview Partners LLC is serving as exclusive financial advisor and Weil, Gotshal & Manges LLP is serving as legal counsel to NEOGEN.

Goldman Sachs & Co. LLC is serving as exclusive financial advisor and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to 3M. Goldman Sachs Bank USA and JP Morgan Securities are providing committed financing for the transaction.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

22. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

23. As set forth below, the Proxy Statement omits material information.

24. First, the Proxy Statement omits material information regarding the Company's and 3M's financial projections.

25. The Proxy Statement fails to disclose, for each set of financial projections: (i) all line items used to calculate the projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

27. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview").

28. With respect to Centerview's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 8.0% to 9.0%; (ii) the terminal values; (iii) Centerview's basis for applying a range of exit multiples of 32.5x to 37.5x to the terminal year; and (iv) the Company's net debt.

29. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.

30. Third, the Proxy Statement fails to disclose the timing and nature of the past services Centerview provided to the Company and its affiliates.

31. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Neogen

33. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Neogen is liable as the issuer of these statements.

35. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

36. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

38. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

39. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Neogen within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Neogen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 31, 2022       **RIGRODSKY LAW, P.A.**

              By: */s/ Gina M. Serra*
                 Gina M. Serra
                 825 East Gate Boulevard, Suite 300
                 Garden City, NY 11530
                 Telephone: (516) 683-3516
                 Email: gms@rl-legal.com

                 *Attorneys for Plaintiff*